UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2006 APR 18 P 4: 31
LORETTA G. WHYTE
CLERK

HEIDI R. BONNET f/k/a
HEIDI BRUSSEAU

CIVIL ACTION

VERSUS

NO. 06-2019

PREMIER JEFFERSON ASIAN
IMPORTS, LLC d/b/a
PREMIER KIA OF KENNER

SECT. SECT D MAG 4

## COMPLAINT

COMES NOW, Heidi R. Bonnet f/k/a Heidi Brusseau, hereinafter called "plaintiff", through her undersigned counsel, complaining of Premier Jefferson Asian Imports, LLC d/b/a Premier Kia of Jefferson, hereinafter referred to as "defendant" or "Premier Kia", and with respect represents that:

1.

Plaintiff is a female citizen of the United States of America and of the State of Louisiana and resides within this judicial district.

2.

The defendant, Premier Jefferson Asian Imports, LLC d/b/a Premier Kia of Kenner is a limited liability company created pursuant to the laws of the State of Louisiana that actually transacts business and receives revenues within this judicial district.

3.

This suit is brought for penalties and damages due to violations of the Fair Credit Reporting Act, 15 U.S.C.A. 1681 et seq and violations of

Fee 350
✓ Process
X Dktd
___ CtRmDep
___ Doc. No

the Equal Credit Opportunity Act, 15 U.S.C.A. 1691 et seq and Regulation "B" of the Federal Reserve Board, 12 C.F.R. 202 et seq effective October 28, 1975.

4.

Jurisdiction is conferred on this honorable court by the Fair Credit Reporting Act, 15 U.S.C.A. 1681(p), by the Equal Credit Opportunity Act, 15 U.S.C.A. 1691e(f) & by 28 U.S.C.A. 1337.

5.

This honorable court further possesses pendant jurisdiction to adjudicate plaintiff's claims asserted herein pursuant to the Louisiana Equal Credit Opportunity Law, La. R. S. 3581-3585 and Civil Code articles 2926 et seq.

6.

At all times pertinent hereto, the defendant, in the ordinary course of its business, regularly extended, offered to extend and arranged for the extension of credit to its customers in the form of secured interest bearing promissory notes payable in more than four (4) installments.

7.

On or about August 5, 2005 the plaintiff purchased from defendant a 2005 Kia Sorento, VIN KNDJD733455486040 (hereinafter sometimes the "Kia"), trading in a 2004 Chrysler Sebring, VIN 1C3EL46X94N283553 (hereinafter sometimes the "trade in") as part of the down payment. The trade in was then encumbered by a chattel

mortgage and/or UCC-1 held by JPMorgan Chase Bank, N. A. (hereinafter "Chase") having a payoff balance of $10,207.00.

8.

Defendant's finance manager, whose name is believed to be Rudy, advised plaintiff that there would be no problem in securing plaintiff financing for the purchase of the Kia at Hibernia National Bank (hereinafter "Hibernia"). Indeed, Rudy assured plaintiff that financing would be procured at Hibernia for a 7.44% interest rate and that the balance due and owing to Chase for the trade in would be paid in full with said balance due "rolled into" the loan to be granted by Hibernia. In fact, defendant, through its employees and/or agents prepared a Combined Promissory Note, Truth in Lending Disclosure Statement and Security Agreement to this effect that was signed by plaintiff on August 5, 2005.

9.

At all times pertinent hereto the defendant through its agents and employees were in possession of plaintiff's cellular telephone number in addition to her home phone number, but never telephonically contacted her.

10.

In the approximately 24 days between plaintiff's purchase of the Kia and the landfall of Hurricane Katrina plaintiff was neither contacted

by defendant nor Hibernia advising her as to the status of the loan to be funded and extended by Hibernia.

11.

Prior to August 29, 2005, Hibernia neither funded the contemplated loan nor mailed to plaintiff a contract return notice advising why plaintiff's credit was denied, nor has the plaintiff been afforded the opportunity to make payments directly to the defendant dealership.

12.

Neither defendant nor Hibernia has ever stated to plaintiff the specific reason(s) why credit was denied to her nor the name and address of the consumer credit reporting agency that furnished the information upon which the decision was made to deny credit to plaintiff. Plaintiff further avers, believes and therefore alleges that defendant and/or Hibernia refused plaintiff's credit on account of information contained in her credit report.

13.

Defendant's failure to afford plaintiff the opportunity to make payments directly to it constitutes an "adverse action" under 15 U.S.C.A. 1681m.

14.

Because plaintiff had been assured by Rudy as well as other of the defendant's agents and/or employees that her purchase of the Kia was

completed, she cancelled her State Farm Insurance policy on the trade in vehicle on August 9, 2005, instead procuring automobile liability insurance on the Kia through U. S. Agencies Insurance.

15.

Plaintiff, in the Kia, evacuated her home in Waveland, Mississippi immediately prior to Hurricane Katrina's landfall.

16.

Hurricane Katrina made landfall on August 29, 2005, bringing in her wake massive destruction of apocalyptic proportions.

17.

Hurricane Katrina destroyed plaintiff's home.

18.

Because of Hurricane Katrina's destruction of plaintiff's home and the difficulty plaintiff experienced in finding replacement housing, plaintiff resided in Virginia until December 2005 at which time she was able to relocate herself and her children to a home in Marrero, Louisiana where they now reside.

19.

Plaintiff later came to learn that her vehicle loan with Chase was never satisfied or paid, either by Hibernia or the defendant. This knowledge came to plaintiff's attention when a "repo man" came to plaintiff's mother's home to repossess the trade in.

20.

Plaintiff thereafter immediately contacted defendant's finance manager, Rudy, who only then advised plaintiff that Hibernia had refused plaintiff's credit at a 7.44% interest rate, but that Hibernia would write the loan at a 12% interest rate. Plaintiff declined the 12% vehicle financing and demanded the return of her trade in. A befuddled Rudy could not find plaintiff's trade in on defendant's flooded inventory list. Neither did he nor anyone else acting for defendant ever explain to plaintiff what has happened to her trade in.

21.

Defendant has never returned the trade in to plaintiff. Nor has defendant ever satisfactorily explained what happened to it after it came into defendant's possession.

22.

Upon further information and belief on account of defendant's actions, inactions and or negligence plaintiff shows that her credit score has been damaged.

23.

Alternatively, plaintiff shows that defendant has violated the Truth In Lending Act, 15 U.S.C.A. 1601 et seq as follows:

24.

On August 5, 2005 plaintiff consummated a credit transaction with the defendant whereby she purchased the Kia.

25.

Defendant violated the Truth in Lending Act by failing to give plaintiff all of the timely and accurate disclosures required by said statute in a form that she could keep. Defendant provided plaintiff only a truncated portion of the required disclosures required to be given to consumers by said statute, see Exhibit A attached hereto and incorporated herein by reference as though copied in extenso.

26.

Plaintiff is entitled to and requests a trial by jury.

WHEREFORE, plaintiff prays that after trial on the merits that judgment be rendered in her favor and against the defendant as follows:

I. That she be awarded penalties, actual damages and punitive damages pursuant to the Fair Credit Reporting Act and the Equal Credit Opportunity Act in such sums and amounts as this honorable court might deem reasonable in the premises;
II. That she be awarded reasonable attorney's fees and all costs of this proceeding; &
III. That she be awarded all other general & actual damages and equitable relief as the facts and the laws and jurisprudence of the State of Louisiana and the United States of America may warrant.

Respectfully Submitted;

*Robert L. Marrero*

Robert L. Marrero, 8947
ROBERT L. MARRERO, LLC
3520 General DeGaulle Drive
Suite 1035
New Orleans, LA 70114
Telephone: (504) 366-8025
Fax:        (504) 366-8026



**HIBERNIA**

COMBINATION PROMISSORY NOTE, TRUTH IN LENDING DISCLOSURE STATEMENT AND SECURITY AGREEMENT (this "AGREEMENT")

Indirect Louisiana Motor Vehicle Sales Finance Act
Fixed/Variable Rate Simple Interest

DATE: 08/05/2005

BUYER: HEIDI A BONNET (Print Full Name)
1206 RUSSELL DRIVE    WAVELAND    MS    39576
(Street No.)    (City)    (Parish)    (State)    (Zip)

CO-BUYER: _____ (Print Full Name)
_____ (Street No.)    (City)    (Parish)    (State)    (Zip)

DEALER/CREDITOR: PREMIER KIA OF KENNER 2712 VETERANS BLVD KENNER LA 70003

I have entered into a credit sale with Dealer evidenced by this Agreement to finance the purchase of the motor vehicle described below (my "Vehicle"). I understand and agree that my credit sale will be assigned to HIBERNIA NATIONAL BANK, 440 Third Street, Baton Rouge, Louisiana 70802-6675 ("Hibernia"). I further understand and agree that Dealer may participate in and receive a portion of the Finance Charge under my credit sale.

| NEW OR USED | YEAR | MAKE | MODEL | BODY TYPE | SERIAL NUMBER | ODOMETER |
|---|---|---|---|---|---|---|
| NEW | 2006 | KIA | SORENTO | 4DR 2WD LX A | KNDJD733455496940 | 16 |

**DISCLOSURES REQUIRED UNDER THE FEDERAL TRUTH IN LENDING ACT AND REGULATIONS**

**Itemization of Amount Financed:**

(1) Cash Price
 (a) Cash Price of Vehicle and Accessories $ 26800.00
 (b) Sales Tax $ 1241.89
 (c) Federal Excise Tax $ N/A
 (d) N/A $ N/A
 Total Cash Price (Sum of (a) through (d)) $ 28041.89

(2) Downpayment
 (a) Cash Downpayment $ 1600.00
 (b) Manufacturer's Incentive Payment $ 2000.00
 (c)(i) Trade-in Allowance $ 10607.00
  (ii) Less Amount Paid to JPMORGAN CHASE BANK, N.A. for Prior Credit or Lease Balance $ 10207.00
  (iii) Equals Net Trade-In Allowance $ 400.00
 Total Downpayment (a + b + c(iii)) $ 4000.00

(3) Unpaid Balance - Amount Paid to You (Dealer) (1 minus 2) $ 24041.89

(4) Additional Amounts Paid to You (Dealer)
 (a) Documentation Fee $ 35.00
 (b) Service Contract (Optional) $ N/A
 (c) Waste Tire Fee $ 8.00

(5) Amounts Paid to Others on My Behalf
 (I understand and agree that you (Dealer) may receive and retain a portion of certain of these amounts)
 Amounts Paid to Insurance Companies:
 (a) Credit Life Insurance $ N/A
 (b) Credit Disability Insurance $ N/A
 (c) Property Insurance $ N/A
 (d) Voluntary GAP Insurance $ N/A
 Amounts Paid to Public Officials:
 (e) Filing Fee $ 10.00
 (f) Termination Fee $ N/A
 (g) DPS Handling Fee $ 8.00
 (h) Certificate of Title Fee $ 18.50
 _____ $ 54.00
 (j) Temporary License Fee $ 4.00
 (k) Vehicle Inspection Fee $ N/A

NOT APPLICABLE UNLESS CHECKED

**ANNUAL PERCENTAGE RATE:** The cost of my credit sale as a yearly rate. **7.44 %**

**FINANCE CHARGE:** The dollar amount my credit sale will cost me. $ **6112.37**

**Amount Financed:** The amount of credit provided to me or on my behalf. $ **24799.39**

**Total of Payments:** The amount I will have paid after I have made all payments as scheduled. $ **30911.76**

**Total Sales Price:** The total cost of my purchase on credit (including my downpayment of $ 4000.00 ). $ **34911.76**

**Payment Schedule:** My credit sale is repayable as follows:

| Number of Payments | Amount | When Payments Are Due |
|---|---|---|
| 71 equal installment payments | $ 429.33 | Monthly beginning on SEP 19 2005 |
| One Final Payment 1 | $ 429.33 | Due on AUG 19 2011 |

**Late Charges:** If any payment is more than 10 days late, I will be charged 5% of the delinquent payment amount, or $10.00, whichever is greater.

**Prepayment:** If I pay my credit sale off early, I will have to pay a penalty.

☐ **Variable Rate:** I understand that the simple interest rate under my credit sale may increase if the Index Rate under my Note increases.
(1) Index Rate is the highest Wall Street Journal Prime Rate of Interest.
(2) The simple interest rate is adjustable quarterly.
(3) The maximum simple interest rate (ceiling rate) under my credit sale is **N/A** % per annum.
(4) Any increase in the simple interest rate under my credit sale will result in an increase in the amount of my final payment.
(5) For example, if the Amount Financed under my credit sale was $20,000.00, and my initial rate is 6% over a 48 month term, and the simple interest rate increases to 6.5% at the end of the third month, my final payment would increase to $692.55.

**Security Interest:** My credit sale is secured by the goods being purchased.

**Security Interest Charges:** (If not financed)
Filing Fee: $ **10.00**
Termination Fee: $ **N/A**

**Contract Reference:** I should look to my Note and Security Agreement for additional information.